AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

In the Matter of the Search of                         )
*(Briefly describe the property to be searched*        )
*or identify the person by name and address)*          )      Case No.    **22mr832**
A black Android device with IMEI 350207637471233.      )
A blue Android device with IMEI 990017690289873.       )
A blue Android device with IMEI 355566112013876.       )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See attachment A, which is incorporated by reference.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized):*

See attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(g)(1) | Felon in possession of a firearm and ammunition. |
| 21 U.S.C. § 841(a)(1) | Distribution of 50 grams and more of methamphetamine |

The application is based on these facts:

See attached affidavit, which is incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Katie M. Stamper, ATF SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephonically sworn and electronically signed _____ *(specify reliable electronic means).*

Date:      05/24/2022                          _____
                                                        *Judge's signature*

City and state:  Albuquerque, NM               United States Magistrate Judge John F. Robbenhaar
                                                        *Printed name and title*

## <u>ATTACHMENT A</u>

### Places to Be Searched - Target Devices

**A.)** TARGET DEVICE 1: The TARGET DEVICE 1 is further described as a black Android device recovered from the search warrant conducted on April 6, 2022, at 7601 N Hills Pl NE, Albuquerque, NM 87109:



**B.)** TARGET DEVICE 2: The TARGET DEVICE 2 is further described as a blue Android device recovered from the search warrant conducted on April 6, 2022, at 7601 N Hills Pl NE, Albuquerque, NM 87109:



**C.)** TARGET DEVICE 3: The TARGET DEVICE 3 is further described as a blue Android device recovered from the search warrant conducted on April 6, 2022, at 7601 N Hills Pl NE, Albuquerque, NM 87109:



## ATTACHMENT B

### Evidence to be Seized

1. All records limited to the timeframe between August 19, 2021, to April 6, 2022, on the TARGET DEVICES which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 841(a)(1), and 18 U.S.C. §§ 922(g)(1) and 924(c), (distribution of 50 grams and more of methamphetamine, felon in possession of a firearm and ammunition, and possession of a firearm during and in relation to and in furtherance of a drug trafficking crime.)

   a. Information related to any firearm used during the course of the crimes listed above, including the identities of who owned, possessed, and used the firearms during the course of the crimes;

   b. Any communication with or among co-conspirators, suppliers, or customers related to the crimes listed above;

   c. Any information relating to the planned distribution or planned use of proceeds of the crimes listed above;

   d. Any subscriber information or contact information to include names, addresses, telephone numbers, email addresses or other identifiers related to the crimes listed above;

   e. Any call log information including missed, incoming and outgoing calls and any information associated with those numbers related to the crimes listed above;

   f. Any photographs or video and audio files related to the crimes listed above;

   g. Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications related to the crimes listed above;

   h. Any documents, spreadsheets, calendar, note, password, dictionary or database entries related to the crimes listed above;

   i. Any business records, to include ledgers, receipts, invoices, shipping documents, inventories, customer lists, bank account information, accounting or business software, customer communications, email communications, website or Social Media sites used for or reasonably related to the operation of an illicit business related to the crimes above; and

   j. Any internet or browser entries or history related to the crimes listed above

   k. Any system data, location information data, or configuration information contained within the TARGET DEVICES.

2. Any other user or system files and data, contained on the target device itself or an attached peripheral device such as a sim card or micro SD card, which would constitute evidence of the violations described above.

3. Evidence of user attribution showing who used or owned the TARGET DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can

store data) any photographic or video format, and any content within smartphone applications such as WhatsApp, Snapchat, Marco Polo, Facebook and others that are stored on the TARGET DEVICES.

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, SA Katie M. Stamper, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since March 2020. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

3. I attended the Criminal Investigator Training Program at the Federal Law Enforcement Training Center, as well as the Special Agent Basic Training Program at the ATF National Academy. During these programs, I received instruction in and practiced the investigation of violations of federal firearms, explosives, and arson statutes. My training and experience has involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the purchase, possession, distribution, and transportation of firearms and of the laundering and concealment of proceeds of firearms and drug trafficking; (2) surveillance; (3) analysis and processing of documentary, electronic, and physical evidence; (4) the legal and illegal purchase of firearms; (5) the execution of arrest and search warrants seeking firearms and narcotics (6) and firearms trafficking.

4.  This affidavit is intended to show only that there is sufficient probable cause for the
    requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.  The property to be searched consists of three cellular telephones, as described in Attachment
    A and B (hereafter referred to as the "DEVICES") and are identified as follows:

    **Target Device 1 (TD1):** A black Android device with IMEI 350207637471233.

    **Target Device 2 (TD2):** A blue Android device with IMEI 990017690289873.

    **Target Device 3 (TD3):** A blue Android device with IMEI 355566112013876.

6.  All of these devices are in the possession of the ATF in Albuquerque, New Mexico.

7.  The applied-for warrant would authorize the forensic examination of The DEVICES for the
    purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.  Between the months of August 2021 to November 2021, ATF conducted three controlled
    purchases while utilizing a reliable Confidential Informant (CI) and an ATF Undercover
    Agent (UC) with Isaac LANDOURS.

### Controlled Buy 1

9.  On August 19, 2021, your affiant conducted a controlled purchase while utilizing a CI.
    The controlled purchase took place at the Comfort Inn, in Albuquerque, NM. The CI utilized
    in this investigation has been deemed reliable by ATF.  On prior occasions, the CI has
    provided information to ATF and other law enforcement agencies that has proven to be
    accurate and reliable.  Further, the CI has participated in prior controlled operations that have

2

led to the seizure of evidence and criminal charges. The CI is working on their own accord and has received monetary compensation. During this controlled purchase, the CI purchased approximately 55.5 grams of methamphetamine and approximately 100 Fentanyl pills from LANDOURS.

10. The CI contacted LANDOURS via cell phone in front of your affiant and a meeting location and time was set between them. Your affiant followed the CI from the pre-arranged meeting location to the Comfort Inn. LANDOURS arrived at the Comfort Inn in a light blue Toyota Scion, bearing the license plate RGT363 (NM). LANDOURS parked and was seen opening the trunk of his vehicle before getting into the CI's vehicle. While inside the CI's vehicle, the CI and LANDOURS exchanged the government funds for narcotics. Your affiant maintained surveillance of meeting and monitored the discussion between the CI and LANDOURS about firearms and drugs.

11. Before and after this controlled purchase took place, SA Nathan Kempton searched the CI and their vehicle with negative results for any contraband. Your affiant field-tested and weighed the suspected methamphetamine and received a positive response for the presence of methamphetamine and total gross weight of 55.5 grams. Your affiant weighed the suspected fentanyl pills and received a total gross weight of 11.5 grams.

Controlled Buy 2

12. On September 1, 2021, your affiant conducted a second controlled purchase while utilizing the same reliable CI. The controlled purchase took place at the Quality Suites in Albuquerque, NM. During this operation, the CI purchased a firearm and ammunition from LANDOURS.

3

13. The CI contacted LANDOURS via cell phone in front of your affiant and a meeting location and time was set between them. Your affiant followed the CI from the pre-arranged meeting location to the Quality Suites. The CI exited the vehicle and went inside of the motel and met with LANDOURS. The CI purchased one (1) firearm with ammunition. The CI and LANDOURS discussed future purchases of firearms and narcotics with LANDOURS. Your affiant maintained surveillance of meeting and monitored the discussion between the CI and LANDOURS about firearms and drugs.

14. Before and after this controlled purchase took place, SA Nathan Kempton searched the CI and their vehicle with negative results for any contraband. Your affiant identified the firearm as a Sig Sauer, model P228 pistol with the serial number B213807. The firearm was loaded with thirteen (13) rounds of 9mm ammunition in its magazine. Your affiant functioned tested the firearm and it functioned as designed. Your affiant also determined that the firearm was not manufactured in New Mexico, therefore affecting interstate commerce.

Controlled Buy 3

15. On November 15, 2021, your affiant conducted a third controlled purchase while utilizing an ATF UC. The ATF UC and CI contacted LANDOURS via cellphone to arrange the meeting time and place. This controlled purchase then took place at the Sun Plaza Apartments parking lot in Albuquerque, NM. During this operation, the UC purchased 58.7 grams of methamphetamine from LANDOURS. During the UC's interaction with LANDOURS, he made statements to the UC that he was "stacking for war" and that he had access to several types of guns, to include ghost guns and military weapons.

16. Your affiant field-tested the substance, which yielded positive results for

4

methamphetamine. Your affiant weighed the substance in its packaging which weighed approximately 58.7 grams.

17. On January 12, 2022, your affiant sent the 58.7 grams methamphetamine purchased from LANDOURS on November 15, 2021, to the New Mexico Department of Public Safety Forensic Laboratories located in Las Cruces, New Mexico. The laboratory results concluded that the substance was 56.04 grams of 100 percent pure methamphetamine.

### Post-Controlled Buy Events

18. On February 11, 2022, your affiant obtained a federal arrest warrant for LANDOURS for committing the crime of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), that being distribution of 50 grams and more of methamphetamine.

### Further Indicia of Drug Trafficking

19. On February 23, 2022, your affiant gained knowledge through a Confidential Source (CS) that LANDOURS had moved from his last known residence, the Montecito Apartments in Albuquerque, NM and was possibly staying at 7601 N Hills Pl NE, Albuquerque, NM 87109 (the "Subject Premises"). LANDOURS' primary vehicle, a light blue Toyota Scion, which is registered to LANDOURS, was identified near the Subject Premises.

20. On February 24, 2022, surveillance was conducted near the Subject Premises. A subject matching LANDOURS description was seen driving a black and red Cadillac sedan, bearing New Mexico license plate BDKL99. The subject driving the Cadillac was observed by ATF Resident Agent in Charge (RAC) Patrick Henning. RAC Henning also observed the Cadillac drive to a nearby car wash. Three unidentified females in separate incidences were seen

5

exiting their vehicles, getting into the Cadillac, and then quickly getting out of the vehicle. Through training and experience, your affiant knows that this behavior is consistent with narcotics trafficking.

21. On March 1, 2022, your affiant conducted surveillance near the Subject Premises and observed three different individuals walking towards and away from the residence in short increments of time. Through my training and experience, I am aware that drug traffickers frequently have consistent foot traffic entering and exiting their premises for short periods of time.

22. On March 9, 2022, your affiant positively identified LANDOURS leaving and returning to the Subject Premises driving the same Cadillac observed at the residence earlier. Your affiant also observed the Cadillac, driven by LANDOURS, stop for a short interaction with an individual at a car wash located near the Subject Premises. Your affiant observed the individual walk away from the Cadillac and walk towards what appeared to be their vehicle.

23. Based off your affiant's training and experience, these short interactions that have been observed near the Subject Premises and in the Cadillac driven by LANDOURS are indicative of narcotics and firearms trafficking. Your affiant also has knowledge of the three controlled purchases conducted with LANDOURS that showed a pattern of narcotics and firearms trafficking over a four-month period.

24. On March 15, 2022, your affiant obtained a tracking device warrant for LANDOURS' vehicle (Case No. 22-MR-429). On March 16, 2022, the tracking device was deployed to the

Cadillac LANDOURS is known to drive. Your affiant was able to establish that
LANDOURS had come and gone from the Subject Premises at all hours of the day and night.

25. Your Affiant queried Isaac LANDOURS through the Interstate Identification Index (III) and
determined that Isaac LANDOURS is a felon, having been convicted of narcotics trafficking
in case number D-202-CR-2019-03466 out of the Second Judicial District Court, State of
New Mexico.

26. On April 6, 2022, a search warrant was conducted at the Subject Premises. LANDOURS was
taken into ATF custody and the Subject premises was searched for firearms, ammunition,
and narcotics. Your affiant seized four (4) firearms, one-hundred and sixty-six (166) rounds
of ammunition and 110 grams of methamphetamine.

27. Your affiant interviewed LANDOURS, who told your affiant that he sometimes sleeps in the
bedroom to the right when you enter the residence. LANDOURS also stated that him and his
girlfriend were asleep in that room when ATF Special Response Team (SRT) made entry into
the residence.

28. LANDOURS told your affiant there would be drugs inside the room he was located in and
stated there would be "three quarters of a quarter pound" (referring to the amount of
methamphetamine). LANDOURS stated "it should be there on the table, that's the last place
I seen it" (referring to the location of the narcotics).

29. LANDOURS also told your affiant there were guns in the closet in the bedroom, but he
didn't know what kind. LANDOURS said its possibly an "AR-15" (referring to the style of

firearm). SA Nathan Kempton asked LANDOURS "Being in your room, I've assumed you have touched it?" (referring to the AR) and LANDOURS responded "yes sir I have."

30. LANDOURS advised your affiant he has been selling narcotics for "close to a year, off and on." LANDOURS also stated the prices he sells drugs for. LANDOURS told agents he sells methamphetamine for $200-$250 an ounce and $3-4 for blues (referring to Fentanyl pills).

31. Your affiant asked LANDOURS about the firearms in his closet, and he stated "I really don't get them out that much, I mean other than I have cleaned them before and that's about it. I've just oiled them and stuff. That's it." LANDOURS also told your affiant that there was ammunition in the drawers in his room and most of the guns already had ammunition in them.

32. It is your Affiant's knowledge that individuals involved in both the legitimate and illegal sale of firearms and the illegal sale of narcotics frequently employ the capabilities of smartphone-type devices to engage in or document such actions, to include use of the internet, messaging applications, camera, telephone, file storage, text and multimedia messaging. As such, your Affiant opines that probable cause exists that evidence of illegal firearms and narcotics transactions occurring between the months of August 2021 through April 2022 exists on the DEVICES.

33. It is known to your Affiant that individuals involved in criminal activities, such as the illegal use and sales of firearms, utilize devices such as the DEVICES to communicate before, during, and after the commission of crimes. These communications can be recorded or stored by various applications, as well as in the device's call logs, text messages, email messages,

chats, multimedia messages, or other electronic communications media. Identifying information, such as contact information or photographs of the individuals communicating, can also be stored on the device in a similar manner. The DEVICES' capabilities, to include GPS and internet access, may also have been used to assist in the planning or execution of the crimes under investigation.

34. It is your Affiant's knowledge that the capabilities of the DEVICES may be utilized to send, receive, or store information, such as pictures or locations. This information may assist law enforcement in identifying the as of yet unidentified subjects in this investigation. Additionally, this information may assist law enforcement in identifying the subjects who possessed or provided firearms or narcotics. It is your Affiant's knowledge that individuals in possession of firearms may take or send pictures or videos of or with the firearms using electronic devices such as the DEVICES.

35. The DEVICES are currently in the lawful possession of the ATF in Albuquerque, New Mexico.  They came into the ATF's possession in the following way: **TD1** and **TD2** were located in the room LANDOURS occupied at the Subject Premises (7601 N Hills Pl NE, Albuquerque, NM 87109) on April 6, 2022 and **TD3** was found in the Cadillac LANDOURS was known to drive that was located on the Subject Premises. Therefore, while ATF might already have all necessary authority to examine the DEVICES, I seek this additional warrant out of an abundance of caution to be certain that an examination of the DEVICES will comply with the Fourth Amendment and other applicable laws.

36. The DEVICES are currently in storage at the Albuquerque ATF office.  In my training and experience, I know that the DEVICES have been stored in a manner in which its contents are,

to the extent material to this investigation, in substantially the same state as they were when the DEVICES first came into the possession of the ATF.

37. Your affiant previously filed a substantially similar search warrant on May 16, 2022, and it was signed under case number MR 22-795 by the Honorable John F. Robbenhaar. This search warrant is being amended because the identifiers for the DEVICES were incorrect on the previously filed Search and Seizure Warrant.

## **TECHNICAL TERMS**

38. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

10

b.  Digital camera: A digital camera is a camera that records pictures as digital picture
    files, rather than by using photographic film. Digital cameras use a variety of fixed
    and removable storage media to store their recorded images. Images can usually be
    retrieved by connecting the camera to a computer or by connecting the removable
    storage medium to a separate reader. Removable storage media include various types
    of flash memory cards or miniature hard drives. Most digital cameras also include a
    screen for viewing the stored images. This storage media can contain any digital
    data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a
    handheld digital storage device designed primarily to store and play audio, video, or
    photographic files. However, a portable media player can also store other digital
    data. Some portable media players can use removable storage media. Removable
    storage media include various types of flash memory cards or miniature hard drives.
    This removable storage media can also store any digital data. Depending on the
    model, a portable media player may have the ability to store very large amounts of
    electronic data and may offer additional features such as a calendar, contact list,
    clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its
    current location. It often contains records the locations where it has been. Some GPS
    navigation devices can give a user driving or walking directions to another location.
    These devices can contain records of the addresses or locations involved in such
    navigation. The Global Positioning System (generally abbreviated "GPS") consists
    of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely

accurate clock. Each satellite repeatedly transmits by radio a mathematical

representation of the current time, combined with a special sequence of numbers.

These signals are sent by radio, using specifications that are publicly available. A

GPS antenna on Earth can receive those signals. When a GPS antenna receives

signals from at least four satellites, a computer connected to that antenna can

mathematically calculate the antenna's latitude, longitude, and sometimes altitude

with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for

storing data (such as names, addresses, appointments or notes) and utilizing computer

programs. Some PDAs also function as wireless communication devices and are used

to access the Internet and send and receive e-mail. PDAs usually include a memory

card or other removable storage media for storing data and a keyboard and/or touch

screen for entering data. Removable storage media include various types of flash

memory cards or miniature hard drives. This removable storage media can store any

digital data. Most PDAs run computer software, giving them many of the same

capabilities as personal computers. For example, PDA users can work with word-

processing documents, spreadsheets, and presentations. PDAs may also include

global positioning system ("GPS") technology for determining the location of the

device.

39. Based on my training, experience, and research, I know that the DEVICES have capabilities

that allows them to serve as a wireless telephone, digital camera, portable media player, GPS

navigation device, and PDA. In my training and experience, examining data stored on

12

devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

40. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

41. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

13

    d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

42. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appears to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

43. The warrant I am applying for would permit law enforcement to obtain from certain individuals the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

    a.  I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices,

14

particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

b.  If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

c.  If a device is equipped with a facial recognition feature, a user may enable the ability to unlock the device through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the device in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers have different names but operate similarly to Face ID.

d.  In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient

15

way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

e.  I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period of time. For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours *and* the passcode or password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, if a locked device is equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

44. Based on the foregoing, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe LANDOURS' fingers (including thumbs) to the fingerprint scanner of the DEVICES; or (2) hold the DEVICES in front of LANDOURS' face and activate the facial recognition feature, for the purpose of attempting to unlock the DEVICES in order to search its contents as authorized by this warrant.

45. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the

16

physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

**46.** I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICES described in Attachments A to seek the items described in Attachment B.

**47.** The affidavit has been reviewed by AUSA Patrick Cordova.

Respectfully submitted,

ATF Special Agent Katie Stamper

Subscribed and sworn telephonically and signed electronically on May 24, 2022

Hon. John F. Robbenhaar
UNITED STATES MAGISTRATE JUDGE

17

## ATTACHMENT A

### Places to Be Searched - Target Devices

**A.)** TARGET DEVICE 1: The TARGET DEVICE 1 is further described as a black Android device recovered from the search warrant conducted on April 6, 2022, at 7601 N Hills Pl NE, Albuquerque, NM 87109:



**B.)** TARGET DEVICE 2: The TARGET DEVICE 2 is further described as a blue Android device recovered from the search warrant conducted on April 6, 2022, at 7601 N Hills Pl NE, Albuquerque, NM 87109:



**C.)** TARGET DEVICE 3: The TARGET DEVICE 3 is further described as a blue Android device recovered from the search warrant conducted on April 6, 2022, at 7601 N Hills Pl NE, Albuquerque, NM 87109:



**ATTACHMENT B**

**Evidence to be Seized**

1. All records limited to the timeframe between August 19, 2021, to April 6, 2022, on the TARGET DEVICES which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 841(a)(1), and 18 U.S.C. §§ 922(g)(1) and 924(c), (distribution of 50 grams and more of methamphetamine, felon in possession of a firearm and ammunition, and possession of a firearm during and in relation to and in furtherance of a drug trafficking crime.)

   a. Information related to any firearm used during the course of the crimes listed above, including the identities of who owned, possessed, and used the firearms during the course of the crimes;

   b. Any communication with or among co-conspirators, suppliers, or customers related to the crimes listed above;

   c. Any information relating to the planned distribution or planned use of proceeds of the crimes listed above;

   d. Any subscriber information or contact information to include names, addresses, telephone numbers, email addresses or other identifiers related to the crimes listed above;

   e. Any call log information including missed, incoming and outgoing calls and any information associated with those numbers related to the crimes listed above;

   f. Any photographs or video and audio files related to the crimes listed above;

   g. Any text messages, email messages, chats, multimedia messages, installed applications or other electronic communications related to the crimes listed above;

   h. Any documents, spreadsheets, calendar, note, password, dictionary or database entries related to the crimes listed above;

   i. Any business records, to include ledgers, receipts, invoices, shipping documents, inventories, customer lists, bank account information, accounting or business software, customer communications, email communications, website or Social Media sites used for or reasonably related to the operation of an illicit business related to the crimes above; and

   j. Any internet or browser entries or history related to the crimes listed above

   k. Any system data, location information data, or configuration information contained within the TARGET DEVICES.

2. Any other user or system files and data, contained on the target device itself or an attached peripheral device such as a sim card or micro SD card, which would constitute evidence of the violations described above.

3. Evidence of user attribution showing who used or owned the TARGET DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history; As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can

store data) any photographic or video format, and any content within smartphone applications such as WhatsApp, Snapchat, Marco Polo, Facebook and others that are stored on the TARGET DEVICES.